IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN BROWN and
BARBARA BROWN,

    Plaintiffs,

v.

                         Case No. 15-9587-JTM

K & L TANK TRUCK SERVICE, INC.,
et al.,

    Defendants.

## MEMORANDUM AND ORDER

  Plaintiffs John and Barbara Brown filed this lawsuit against defendants K & L Tank Truck Service, Inc. ("K & L"), Alfonso Martinez, president of K & L, and Tom Herrell. Plaintiffs claimed that Martinez breached a contract in which John Brown promised to assist and make certain guarantees for a loan to buy K & L's stock back from an Employee Stock Ownership Program ("ESOP"), and assist in convincing K & L's employees to sell their stock back to K & L to facilitate Martinez's ability to purchase the majority of K & L's stock. Plaintiffs claim that in exchange, Martinez, on behalf of K & L as its president, agreed to employ and provide health insurance to plaintiffs for the rest of their lives.

  Following defendants' motion for summary judgment—which Judge Lungstrum granted in part and denied in part—a jury heard evidence from November 28, 2017, to December 18, 2017. Defendants moved for judgment as a matter of law at the close of

plaintiffs' case, and the court granted their motion as to plaintiffs' unjust enrichment claim.  Following deliberations, the jury found that Martinez did not enter into a contract with John Brown for lifetime employment with K & L.  However, the jury concluded that Martinez and Herrell breached a contract when they failed to pay John Brown after he agreed to sell his two shares of stock in exchange for twenty percent (20%) of the total shareholder bonus distributed in 2013.  The jury awarded plaintiffs damages of $20,000 against Martinez and $20,000 against Herrell.

The matter is now before the court on plaintiffs' motion for a partial new trial pursuant to Federal Rule of Civil Procedure 59(a) on all issues except whether there was a breach of contract for the 2013 shareholder bonus (Dkt. 181).[1]  Plaintiffs argue that there was sufficient evidence to present their unjust enrichment claim to the jury.  Plaintiffs allege that they were prejudiced when defendants produced relevant documents in the middle of trial that were not disclosed during discovery.  Plaintiffs also criticize two jury instructions and the court's charge to the jury preceding its deliberations.  For the reasons stated below, plaintiffs' motion is denied.

    I.    **Legal Standards**

A motion for new trial under Rule 59(a) may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  Fed. R. Civ. P. 59(a)(1)(A).  Such motions, which are committed to the discretion of the

---

[1] Plaintiffs claim that the court erred in granting summary judgment on several of their claims, and move for the court to reverse its rulings.  Plaintiffs do not present new legal authority or facts, and cite their former arguments in support of their motion.  The court finds that it did not err when it previously granted summary judgment on plaintiffs' fraud, age discrimination, Kansas Wage Payment Act, and retaliation claims (Dkt. 98).

trial court, are not regarded with favor and are granted only with great caution. *Paradigm All., Inc. v. Celeritas Techs.*, LLC, 722 F. Supp. 2d 1250, 1258 (D. Kan. 2010). They are generally granted only "when the court believes the verdict is against the weight of the evidence, prejudicial error has occurred, or substantial justice has not been done." *Wirtz v. Kan. Farm Bureau Servs., Inc.*, 311 F. Supp. 2d 1197, 1226 (D. Kan. 2004). A party seeking to set aside a jury verdict "bear[s] the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence." *Util. Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc.*, 734 F. Supp. 2d 1210, 1216 (D. Kan. 2010), *aff'd*, 443 F. App'x 337 (10th Cir. 2011).

## II.     Undisclosed Documents

Plaintiffs claim that they were unfairly prejudiced when defendants failed to disclose documents from Charles Claar, K & L's accountant. The documents consist of Claar's notes and emails regarding the parties' 2004 buyout of the ESOP and other matters about the case. Defendants deny any intentional nondisclosure and say they were under the impression that all the documents from Claar and/or his accounting firm Lewis, Hooper & Dick ("LHD") had been turned over to plaintiffs in accordance with their discovery request and subpoena. Defendants assert that the breakdown was with the third-party scanning company that scanned the documents from LHD and provided them to plaintiffs. Still, it is undisputed that plaintiffs were unaware of the existence of these documents until Claar's testimony at trial.

*Claar's 2004 documents*

Plaintiffs assert that Claar's notes and emails addressing the 2004 ESOP buyout are highly relevant to their claims that the parties entered into an express and/or implied lifetime employment agreement. Plaintiffs reviewed the documents prior to the close of their case and acknowledge that they were able to admit certain documents during trial. But plaintiffs allege that the late production resulted in substantial and unfair prejudice that was not cured.

Plaintiffs argue that they lost credibility with the jury because they asked Claar whether he had created documents regarding defendants' inquiries into repurchasing the stock from the ESOP expecting him to answer no. But Claar answered "yes." Plaintiffs contend they looked like they were not prepared or were trying to trick Claar. Plaintiffs also believe the jury was under the impression that they were hiding information from it because they did not show the documents to the jury.

Plaintiffs further argue that they were prejudiced when the court did not allow them time to examine the documents before continuing direct examination of Claar. Plaintiffs state that they lacked knowledge about the information within these unproduced documents to question and/or impeach Claar. And even though the court informed defendants that they could not use the unproduced documents, defendants continued to elicit testimony from Claar about these documents over plaintiffs' objection. Plaintiffs contend that the court's instruction to the jury to disregard any discussions concerning these documents did not cure the prejudice because it failed to inform the jury that these documents were not produced pursuant to plaintiffs'

subpoena and request for production. Consequently, the jury—plaintiffs believe—was left with the impression that plaintiffs were at fault.

Although plaintiffs were surprised, they were not unduly prejudiced so as to warrant a new trial. *See Util. Trailer Sales*, 734 F. Supp. 2d at 1228 ("A showing of prejudice, however, is essential.").

> It is well settled that Rule 59 provides a means of relief in cases in which a party has been unfairly made the victim of surprise. 11 Wright & Miller, Federal Practice and Procedure § 2805 at 38 (1973). The surprise, however, must be "inconsistent with substantial justice" in order to justify a grant of a new trial.[2]

*Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 111 (5th Cir. 1982).

Defendants were not allowed to introduce these documents until plaintiffs had reviewed them. The jury was also given a curative instruction. The "central assumption of our jurisprudence is that juries follow the instructions they receive." *Wirtz*, 311 F. Supp. 2d at 1228–29. There is no evidence in the record that the jury disregarded this instruction or blamed plaintiff for the missing documents.

Additionally, plaintiffs received the undisclosed documents before they rested their case-in-chief. Although not ideal, plaintiffs had a week-long break in the middle of trial to review these documents and introduced some of the documents into evidence. Aside from plaintiffs' concerns, there is no evidence in the record to support

---

[2] "This application of [Rule 59] is generally limited to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify." *Berkowitz v. Berkowitz*, No. CIV.A. 11-10483-DJC, 2015 WL 1442987, at *3 (D. Mass. Mar. 30, 2015), *aff'd*, 817 F.3d 809 (1st Cir. 2016) (internal quotations omitted).

a finding that the jury felt tricked or believed plaintiffs were hiding information from it. The court found plaintiffs to be well-prepared and organized throughout the trial.

Plaintiffs assert that they could not use some of Claar's 2004 emails and notes, which contradicted some of defendants' arguments at trial, because there was not time to do additional discovery. And it would have confused the timeline plaintiffs established during their opening statements and plaintiffs' overall understanding of the case. Even so, the court does not find that these documents were of such magnitude to warrant a new trial; they do not memorialize an agreement for lifetime employment and health insurance. The jury heard testimony from the witnesses—including John Brown—as to how the 60/20/20 shareholder split came about and other details about the 2004 buyout of the ESOP. Therefore, no injustice occurred. *See generally Berkowitz*, 2015 WL 1442987 at *1 ("'[A] district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice,' and the Court may independently weigh the evidence presented at trial.").

*2017 Emails*

Plaintiffs refer to email exchanges between Claar and defense counsel that show Claar wanted to help defendants with their case. Claar also inquired, on behalf of defendants, as to whether K & L should pay 2017 bonuses because defendants were concerned it might be used against them at trial. Plaintiffs argue that they could have presented a stronger case had they been able to use these emails to impeach Claar and show his bias on direct. Plaintiffs also contend that presenting some of the emails

-6-

during cross examination of Claar was not as effective as doing it during direct examination.

Plaintiffs' arguments are unpersuasive. Plaintiffs could have recalled Claar to testify about the emails in their case-in-chief. *See, e.g.*, *Ryder v. City of Topeka*, 814 F.2d 1412, 1426 (10th Cir. 1987) (upholding the denial of a motion for new trial where a document was not disclosed until trial; finding no prejudice because the moving party could have recalled witnesses to testify about the document). A "court should not grant a new trial merely because the losing party can probably present a better case on another trial." *Id.*

Additionally, K & L's 2014 and 2015 notes and minutes were introduced into evidence, and the jury heard evidence about defendants' financial status after plaintiffs' employment was terminated. Herrell testified that they got some more work after they lost the BP Amoco account. Plaintiffs asked Herrell about bonuses that were distributed in 2014 and 2015. Plaintiffs questioned Claar about the November 17, 2017 email and noted that defendants were considering issuing a $300,000 bonus in 2017. Thus, plaintiffs were not unfairly prejudiced without the financial books because they were able to counter defendants' position that they were in a poor financial state with other evidence and admit the November 17, 2017 email.

*Roger Phillips*

Plaintiffs claim that they were prejudiced by not having the documents prior to trial because they were unaware of the extent of attorney Roger Phillips's participation with the ESOP buyout. Plaintiffs knew that Phillips assisted with the buyout, but

believed that his participation was minor. It was not until plaintiffs received the documents during trial that plaintiffs learned Phillips was a "key witness," and had they known, they would have deposed him. (Dkt. 182, at 16).

Defendants are correct that the information Roger Phillips possessed related to the process and options involved in buying out the ESOP. There is no information contained in the undisclosed documents that Phillips had independent knowledge of any agreement for lifetime employment and health insurance. While plaintiffs may not have known how much Phillips was involved with the purchase of the ESOP, they knew that he was involved. Plaintiffs chose not to depose him or call him as a witness. Therefore, no unfair surprise, prejudicial error, or injustice occurred with respect to this matter. *See Wirtz*, 311 F. Supp. 2d at 1226.

### III.  Jury Instructions

Plaintiffs assert that they are entitled to a new trial because they were prejudiced when the court gave three separate instructions to the jury.

*Fiduciary Duty Instruction*

Plaintiffs argue that the court erred when it instructed the jury on fiduciary duty (Instruction No. 17) because the duty was not in issue. Thus, it distracted or confused the jury and prejudiced plaintiffs.

The jury was instructed on the definition of a fiduciary duty, and told that the directors of a corporation are fiduciaries of the corporation and its stockholders. The jury was also informed that this duty requires directors to act in the best interests of the corporation and its stockholders. Plaintiffs do not argue that it misstated the law, just

-8-

that it was unnecessary.  But John Brown, Martinez, and Herrell were directors of K & L, and the instruction aided the jury in understanding the circumstances behind the parties' behaviors.  No error occurred.

*Principal/Agent Relationship Instruction*

Plaintiffs claim that the principal/agent-relationship instruction (Instruction No. 18) misstated the law, and "likely may have resulted in the jury verdict against [plaintiffs] on their claim of breach of contract for lifetime employment." (Dkt. 182, at 19).  Specifically, the court failed to inform the jury that a single agent may have both express authority and apparent authority, the extent of which can be very different.

Instruction No. 18 informed the jury that Kansas recognizes three types of agency: express, implied, and apparent.  It also stated that apparent agency could exist even if Martinez did not have express or implied agency.  At no time did the court instruct the jury that these types of agency were mutually exclusive.  Additionally, the court explained that the burden in a civil case is always preponderance of the evidence, but the clear and convincing standard involves the quality of evidence to establish the facts to support actual, implied, or apparent authority.  *See* PIK Civil 4th 107.01 cmt. on Burden of Proof.  The court finds that there was no misstatement of law in Instruction No. 18.

*Charge to the Jury*

Plaintiffs disapprove of the court's charge to the jury to document its questions in writing during its deliberations.  The court explained to the jury that the reason for

putting the question in writing was to ensure that everyone was on the same page as to what was actually asked and how to answer that specific question.

This charge had nothing to do with the parties' employment agreement. The court did not state that a written question is more significant than if the jury orally asked a question. The court simply wanted the record to be accurate. Regardless, the jury was instructed that a contract includes an agreement that can be oral, written, or implied by the parties' conduct (Instruction No. 13). At no time did the jury hear a statement by any party, witness, or the court that an oral agreement was less important or legally binding than a written agreement. Therefore, plaintiffs were not prejudiced by the court's charge to the jury.

## IV. Unjust Enrichment

During trial, the court granted defendants' motion for judgment as a matter of law under Fed. R. Civ. P. 50 on plaintiffs' claim of unjust enrichment. The court stated,

> the unjust enrichment claim fails as a matter of law. I've heard, I think, about all the testimony that there will be with respect to that and they either had a deal or they didn't. I don't know that the company received any benefit unfairly as a result of any conversations between Mr. Brown and Mr. Martinez or Mr. Herrell, so I am going to take that issue away from the jury and find for the defendants on that point.

(Dkt. 182-12, at 4). After trial, the court issued a written Memorandum and Order on its oral ruling (Dkt. 177).

"Under Kansas law, the elements of an unjust enrichment claim are (1) plaintiff conferred a benefit on defendant; (2) defendant knew and received a benefit; and (3) defendant retained the benefit under circumstances that make it unjust." *Spires v. Hosp.*

*Corp. of Am.*, 289 F. App'x 269, 272–73 (10th Cir. 2008) (citing *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 910 P.2d 839, 847 (1996)).  Given all the evidence presented at trial, a reasonable jury could not find that defendants received a benefit unfairly as a result of plaintiffs' conduct.  The court finds no basis to deviate from its prior rulings—it is not against the weight of evidence—and plaintiffs' motion is denied with respect to this issue.

**V.     Defense Counsel's Questioning**

Monte Vines, trial counsel for defendants, had a prior relationship with plaintiffs in 2004 as counsel for K & L when plaintiffs were directors, officers, and/or employees of K & L.  Kansas Rules of Professional Conduct prohibit an attorney from serving as an advocate at a trial in which he is likely to be a necessary witness.  KRPC 3.7.  However, the parties came to the agreement that the trial could be conducted without Vines serving as a witness, and plaintiffs did not move to have Vines removed as counsel.

Plaintiffs claim that Vines repeatedly stated his recollection of certain meetings and conversations that he was present for, which violated the court's order granting plaintiffs' motion in limine.  Plaintiffs assert that the jury may have construed Vines's statements as testimony.  Plaintiffs note that Vines was not under oath.  Plaintiffs' objected to this line of questioning, which the court overruled.

The court instructed the jury that the lawyers' statements, objections, and arguments were not evidence (Instruction No. 5).  Regardless, the court does not find that Vines's questions amounted to him testifying as a witness as to his first-hand personal knowledge about certain events relevant to plaintiffs' claims.  For example,

-11-

Vines asked, "do you remember when you were in my office?" (Dkt. 184, at 20). This line of questioning assisted the witness in recalling certain events. Vines was not inserting his person knowledge about the event. With respect to Vines's notes regarding his involvement, these notes were produced during discovery and the parties agreed to the admission of Vines's notes as a trial exhibit. Both sides questioned witnesses using Vines's notes. The fact that Vines was not under oath is of minimal concern as Vines has an ethical duty to be candid with the court. KRPC 3.3[3] Thus, no unfair prejudice or injustice occurred.

## VI. Conclusion

Although plaintiffs did not receive all the discovery pursuant to their request and subpoena, plaintiffs were not prejudiced to the extent that a new trial is necessary to prevent injustice. Plaintiffs were not prejudiced by the court's instructions and charge to the jury or by Vines's questioning. Furthermore, the court's orders granting summary judgment and judgment as a matter of law in favor of defendants on some of plaintiffs' claims were proper and not against the weight of evidence. Therefore, plaintiffs are not entitled to a new trial.

IT IS THEREFORE ORDERED this 21st day of March, 2018, that plaintiffs' motion for a partial new trial pursuant to Fed. R. Civ. Pro. 59(a) (Dkt. 181) is denied.

s/ J. Thomas Marten

J. THOMAS MARTEN, JUDGE

---

[3] "Pursuant to D. Kan. Rule 83.6.1(a), the [KRPC] as adopted by the Supreme Court of Kansas are 'the applicable standards of professional conduct' for proceedings in federal courts in the District of Kansas. *Raymond v. Spirit AeroSystems Holdings, Inc.*, No. 16-1282-JTM-GEB, 2017 WL 2831485, at *7 (D. Kan. June 30, 2017).